## ALLEGHENY BASE-BALL CLUB v. BENNETT.*

*(Circuit Court, W. D. Pennsylvania. November 18, 1882.)*

EQUITY—SPECIFIC PERFORMANCE—PERSONAL SERVICES.

Respondent, on the third of August, 1882, signed an agreement, in consideration of $100, by which he bound himself to execute a formal contract to give his personal services as a base-ball player to complainant during the season. Subsequently, respondent refused to sign the formal contract, and was about to sign a contract obligating himself to give his services to a rival base-ball club. Complainant filed a bill to compel respondent to execute the formal contract with him as agreed, and to restrain him from executing the agreement with, and giving his services to, the other club. *Held*, on demurrer, that the bill must be dismissed.

In Equity. Bill to enforce compliance with agreement to enter into contract to give personal services.

Bill in equity by the Allegheny Base-ball Club, a corporation of Pennsylvania, against Charles W. Bennett, a citizen of Michigan, to compel the respondent to execute a formal contract to give his exclusive services as a base-ball player to the complainant during the base-ball season of 1883, and also for an injunction to restrain him from executing a like agreement with the Detroit Base-ball Club, and from performing such services for any other person or corporation than the complainant during the season named.

The bill was filed on the fifth day of October, 1882, and was based upon the following written instrument, to-wit:

It is hereby agreed, this third day of August, 1882, between the Allegheny Base-ball Club and Charles W. Bennett, that said Charles W. Bennett hereby promises and binds himself that between the fifteenth and thirty-first days of October, 1882, he will sign a regular contract of the Allegheny Base-ball Club, a chartered company belonging to the American Association of Base-ball Clubs, which contract shall bind him to give his services as a base-ball player to said club for the season of 1883, and shall bind said Allegheny Club to pay him the sum of $1,700 for and during such season of 1883; and in consideration of his agreement to sign such a contract in October, the sum of $100 is now paid to said C. W. Bennett, the receipt of which is hereby acknowledged. Witness our hands and seals this third day of August, 1882.

THE ALLEGHENY BASE-BALL CLUB, by

A. G. PRATT,    H. D. McKNIGHT, President. [Seal.]
  Witness.    C. W. BENNETT.    [Seal.]

The bill averred substantially that the complainant was engaged in the business of playing base-ball for profit, and that by the expend-

*From the Pittsburgh Legal Journal.

iture of much time and large sums of money it made preparations for the exhibition of such games, and expected to receive large returns from the same; that the respondent was a skillful player of base-ball, and, in consequence of his agreement with complainant, E. N. Williamson and James F. Galvin, two other skillful players, had entered into a similar agreement with complainant; that respondent had refused to sign the "regular contract" referred to, and had entered into a like contract with the Detroit Base-ball Club; that, accordingly, Williamson and Galvin refused to keep their said engagement with complainant, and that the base-ball season had now so far advanced that complainant could not secure other players of equal skill with said Bennett, Williamson, and Galvin, whereby complainant "would be seriously damaged, to an amount of not less than $1,000."

The bill prayed that Bennett be required to sign the "regular contract," and perform his covenants, and also that he be restrained from entering into a similar contract with the Detroit Base-ball Club, or any other association or person, and from playing base ball "for hire," during the base-ball season of 1883, for any other than complainant.

The complainant moved for a preliminary injunction. The motion was argued by James Bakewell, and was opposed by A. Tausig, and was denied. The respondent then filed a general demurrer, on the grounds—

(1) That the bill was prematurely brought; (2) that the agreement was a mere preliminary arrangement, anticipating the making of a final contract, and that, therefore, there was no contract before the court capable of specific enforcement; (3) that the agreement was unlimited as to place, and was, therefore, unreasonable and void as against public policy, as covenants in restraint of trade; (4) that the complainant had an adequate remedy at law.

*A. Tausig, A. W. Duff,* and *Marshall Brown,* for the demurrer.

To maintain a suit there must be a cause of action when such suit is commenced. 55 Ga. 329; 29 Ill. 497; 4 Sneed, (Tenn.) 583. One who has anything to do on a particular day has the whole of that day to perform such act, so that suit for a breach of performance cannot be instituted until the next day. 102 Mass. 65; 6 Watts & S. 179; 18 Cal. 378. And, in general, the time within which a contract is to be executed is as much the essence of it as any other part. 6 Wis. 120; 43 Me. 158; 18 Ind. 365; 17 Me. 316; 22 Me. 133.

1. The present bill for an injunction to restrain the defendant from playing with the Detroit Club, as in violation of the alleged agreement, will not lie for the reason the contract is a mere preliminary arrangement, and not a final agreement. What are the terms of the alleged contract? They provide and contemplate the execution of a regular agreement, in order to bind the parties and render the contract mutual, final, and conclusive. The preliminary contract shows that it was executed with reference to a future and final agreement between the parties. A contract requires mutuality as to all its essential terms, stipulations, and conditions. Is there any allegation upon the face of the bill that a final, regular contract was ever agreed upon between the parties? There is no contract, therefore, capable of being enforced in a court of equity, and the present bill must be dismissed. *South Wales Ry. Co.* v. *Wythes,* 5 De Gex, M. & G. 888. Specific performance will not be decreed if it is not clear that the minds of the parties have come together. *Wistar's Appeal,* 80 Pa. St. 484.

2. Specific performance will not be enforced, directly or indirectly, unless the agreement is *mutual,* its terms *certain,* its enforcement practicable, and the complainant is without adequate redress in an action at law, (Bispham, Eq. § 377, and cases cited; 10 Wall. 339; 5 De Gex, M. & G. 888;) and it will not be enforced when it is doubtful whether an agreement has been concluded, (14 Pet. 77; 81 Pa. St. 484;) nor where the duties are continuous and require skill and judgment, (10 Wall. 339.) A court of chancery will not decree the specific performance of a contract, where it would be impossible for the court to enforce the execution of its decree, or where the literal performance, if enforced, would be a vain and idle act. Bispham, Eq. 436.

3. Even if the alleged contract is legal and binding on the defendant, the demurrer should be sustained, because the plaintiff has an adequate remedy at law. It may have to pay a higher salary to secure a player of Bennett's skill, and the difference would be the measure of damages for breach of contract.

4. Even if the court should be of the opinion that a contract was executed, full, final, and mutual as to all its terms, conditions, and stipulations, and also of opinion that negative covenants not to exercise a trade, profession, or calling within reasonable limits may be enforced by injunction, such conclusion would have no application to enjoin and restrain the defendant. The contract is unreasonable and void on grounds of public policy, as in cases of covenants in

restraint of trade, because it is unlimited. *McClurg's Appeal*, 58 Pa. St. 51; *Gillis* v. *Hall*, 2 Brewster, 342; *Catt* v. *Tourle*, Law R. 4 Ch. App. 654.

5. The demurrer should be sustained because equity will not indirectly enforce specific performance of a contract for personal services where the services require a succession of acts whose performance cannot be accumulated by one transaction, but will be continuous and require the exercise of special knowledge, skill or judgment. Pom. Spec. Per. § 312; *Ford* v. *Jermon*, 6 Phila. 6; *De Pol* v. *Sohlke*, 7 Rob. (N. Y.) 280; *Sanquiricio* v. *Benedetti*, 1 Barb. 315; *Kemble* v. *Kean*, 6 Sim. 333; *Hills* v. *Croll*, 2 Phil. 60; *Rolfe* v. *Rolfe*, 15 Sim. 88; *Fothergill* v. *Rowland*, Law R. 17 Eq. 132; *Kimberley* v. *Jennings*, 6 Sim. 340. The personal acts with respect to which courts of equity entertain jurisdiction to decree specific performance have reference to property of some kind. There is none where a contract for personal services alone has been *actively* enforced. There are several, however, in which the court has interfered *negatively*. Thus, in the case of a theater, considered as a partnership, a contract with the proprietors not to write dramatic pieces for any other theater is valid, and a violation of it will be restrained by injunction. *Clark* v. *Price*, 2 Wilson, 157; Willard, Eq. 278. But where there is no partnership between the parties, and the defendant has violated his engagement to one theater and formed a conflicting engagement with another, a court of equity will not interfere either *actively* to compel performance of one contract, or negatively to prevent the performance of the other. Willard, Eq. 278; *Kemble* v. *Kean*, 6 Sim. 333. The cases where injunctions have issued relate (1) to partnership agreements; (2) to property of some kind; (3) to express negative covenants. Willard, Eq. 277, 278.

6. If the court should be of opinion that the alleged contract is complete, mutual, certain, and final, and that under it the plaintiff has no full, complete, and adequate remedy at law, the present bill will not lie for the following reasons: (1) It is prematurely brought. No injury to plaintiff (if any) can arise until the ball season of 1883 commences. As the plaintiff will not be actively engaged under the alleged contract until the regular season of 1883 opens, no damage can result until that time from the act which it is sought to enjoin. (2) There is no right to, or necessity for, an injunction, for it cannot appear, at the present time, that defendant will play ball during the season of 1883, in violation of said alleged contract. *De Rivafinoli* v. *Corsetti*, 4 Paige, 264; *De Pol* v. *Sohlke*, 7 Rob. (N. Y.) 283. If

the injury be doubtful, eventual, or contingent, equity will not enjoin. *Rhodes* v. *Dunbar,* 57 Pa. St. 274; *Huckenstein's Appeal,* 70 Pa. St. 108. If the alleged injury is only problematical, according as other circumstances may or may not arise, or if there is no pressing need for an injunction, the court will not grant it until a tort has actually been committed. Kerr, Injunc. 339.

*James Bakewell* and *J. S. Ferguson, contra.*

ACHESON, D. J., (*orally.*)   Demurrer sustained and bill dismissed.

---

KIRBY, Ex'r, etc., *v.* LAKE SHORE & M. S. R. Co. and others.*

(*Circuit Court, S. D. New York.* November 17, 1882.)

1. PARTNERSHIP—EXECUTOR OF DECEASED PARTNER SUING IN EQUITY.

An executor of a deceased member of a partnership may maintain a suit in equity to discover the amount due from defendant to such partnership, and to recover such amount when it appears that the surviving partner has refused to join in the suit.

2. STATUTE OF LIMITATIONS—DISCOVERY OF FRAUD.

Under section 382 of the Code of Civil Procedure of New York, as construed by the highest court of the state, the statute of limitations begins to run from the time an account is settled, and not from the time of the discovery of facts showing that such settlement was fraudulently made.

3. SAME—FOREIGN CORPORATION.

A foreign corporation cannot avail itself of the statute of limitations of this state.

4. EQUITY—DISCOVERY—FOREIGN CORPORATION.

Where the officers of a foreign corporation are not made parties in an action against such corporation, there can be no discovery.

5. SAME—NO RELIEF AGAINST SOME OF DEFENDANTS.

That no relief can be had against some of the defendants who were parties to a fraud, will not avail the other defendants.

*G. Norris,* for complainant.

*J. E. Burrill,* for defendants.

WALLACE, C. J.   The bill is filed by the executor of a deceased member of the firm of Alexander & Co. for an accounting concerning moneys alleged to be due to that firm from the principal defendants. The bill alleges that between June 10, 1870, and March 4, 1871, the defendants transported for the firm of Alexander & Co. 2,028 car-loads of cattle under a contract which entitled the firm to be allowed certain sums by way of drawback on the monthly settlement of account between the parties, and that upon the monthly settlements which

*Affirmed. See 7 Sup. Ct. Rep. 430.